# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TOBIAS PAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-2566 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LATONYA WILLIAMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tobias Payton ("Plaintiff") brings suit against Defendants LaTonya Williams ("PA Williams"), Saleh Obaisi ("Dr. Obaisi"), Imhotep Carter ("Dr. Carter"), and Wexford Health Sources, Inc. ("Wexford") (collectively, the "Medical Defendants") under 42 U.S.C. § 1983 based on the Medical Defendants' alleged deliberate indifference to his serious medical needs.[1] Currently before the Court is the Medical Defendants' motion [67] to dismiss Plaintiff's amended complaint for failure to state a claim. For the following reasons, the Medical Defendants' motion [67] is granted as to Plaintiff's *respondeat superior* claim against Wexford (Count V) and denied as to Plaintiff's deliberate indifference and *Monell* claims against the Medical Defendants (Counts I and III). This matter is set for status on December 20, 2017 at 9:00 a.m. The parties should come prepared to discuss whether and, if so when, a *Pavey* hearing should be conducted to determine if Plaintiff has exhausted his administrative remedies.

---

[1] Plaintiff also brings suit against several employees of the Illinois Department of Corrections ("IDOC"). This order does not discuss the IDOC defendants because they are not relevant to the motion to dismiss that is currently before the Court.

**I.     Background[2]**

Plaintiff has been an inmate in the Illinois Department of Corrections ("IDOC") off and on since at least 2002. Wexford, a private corporation, provides medical services to IDOC inmates under a private contract. During his time in IDOC correctional centers, Plaintiff has been treated by various physicians and psychiatrists who are employed by Wexford. These medical practitioners have prepared medical records, which are kept and maintained by the Illinois penal system and are accessible to Wexford medical personnel. Plaintiff's prison medical records reflect that, since childhood, Plaintiff has suffered from chronic arthritis in his knees. These records also reflect that, as early as 2002, Plaintiff experienced severe pain in his knees, as well as pain in his back.

Between 2009 and July 9, 2014, Plaintiff was incarcerated at IDOC's Stateville Correctional Center ("Stateville"). PA Williams, Dr. Obaisi, and Dr. Carter worked at Stateville and were employees of Wexford during Plaintiff's incarceration at that correctional center. PA Williams was a physician's assistant. Dr. Obaisi and Dr. Carter were physicians and, during at least part of the relevant period, each served as Medical Director of Stateville. During this period, the prison required inmates to submit written requests to receive medical treatment from a doctor or PA. The Doe defendant—a Wexford or IDOC employee—decided which inmates would be allowed to see a doctor or PA. Neither Doe nor any other representative of Wexford or Stateville "retained the submitted requests, kept a log of submitted requests, or otherwise recorded the identity of inmates seeking medical treatment or the dates on which such inmates sought medical treatment." [65] at 5.

---

[2] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's amended complaint [65]. See *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014). Plaintiff's amended complaint was prepared by recruited counsel.

2

"From the inception of his placement at Stateville in 2009 and continuing through and including his transfer from Stateville in July 2014, [Plaintiff] submitted constant, repeated oral and written requests to see a physician or [PA] to obtain treatment for his chronic arthritis and/or back pain." [65] at 5. Plaintiff alleges that the Medical Defendants, collectively, acted with deliberate indifference by refusing and/or disregarding his numerous and repetitive requests to see a doctor or PA for his arthritis and back pain and to get refills of his prescribed medications; requiring him to file grievances before finally scheduling him to see a PA or doctor; failing to provide him with automatic and/or permanent refills for his prescribed medications; and failing to schedule him for necessary additional tests. Plaintiff alleges that the times he "was finally permitted to see a physician or [PA] were few and far between, and even those few visits failed to provide [Plaintiff] with the necessary treatment for his permanent, ongoing conditions." *Id*. at 5-6.

In particular, on December 17, 2009, Plaintiff filed a grievance complaining of the lack of treatment he was given for the arthritis in his knees and back pain. On December 20, 2009, Plaintiff saw PA Williams, who prescribed two months of Tylenol, gave him some "Icy hot," and authorized a permit for a back support. PA Williams also had x-rays taken of Plaintiff's knees and lower spine, "which came back negative." [65] at 6. In January 2010, Williams treated Plaintiff again and ordered three months' worth of Motrin, Robaxin, and a balm. In March 2010, Williams treated Plaintiff and ordered a back brace and three additional months of medication.

However, after the March 2010 visit, "the treatment provided for [Plaintiff's] ongoing medical problems was sporadic at best." [65] at 6. Plaintiff did not see Williams again until six months later, in September 2010. Williams gave Plaintiff only one month's worth of medication and two months' worth of balm, and did not schedule a follow-up visit.

Thereafter, Plaintiff repeatedly requested medical treatment, but was ignored. In April 2011, he filed a grievance explaining that he had "been without pain medications for my back and the arthritis in my knees for over a year," despite repeated requests for treatment. [65] at 7. Plaintiff was scheduled to see a doctor on May 24, 2011, but not provided with any refills of his medications to hold him over until then.

Plaintiff was not allowed to see a doctor or PA on May 24, 2011, and instead had to wait until August 30, 2011. He was not given any medication during this period, despite filing a grievance on July 4, 2011. When Plaintiff finally saw Williams on August 30, 2011, she gave him one month's medication and balm and told him to exercise and stretch. She did not schedule a follow-up appointment.

Plaintiff did not have any follow-up appointments or receive any refills of his medication or balm by December 2011. He filed a grievance, which was dismissed on the basis that he was scheduled to see a doctor in March 2012. He was not given any medication refills to hold him over until then.

On March 8, 2012, Plaintiff saw Dr. Carter. Dr. Carter ordered an x-ray of Plaintiff's knees and lower spine and prescribed three months' worth of Naprosyn and 15 pills of Tylenol. Dr. Carter did not schedule a follow-up appointment. Plaintiff was not allowed to see a doctor or PA for the rest of 2012, and did not get any refills on his medications.

In September and December 2012, Plaintiff met with a social worker, Beth Hart, who was employed by IDOC or Wexford. Plaintiff complained that he had been trying to see a doctor for months for his chronic back and knee pain and threatened to file a lawsuit. At their December 2012 appointment, Hart told Plaintiff that she had been advised by "medical" that "no more attention would be given him regarding his arthritis." [65] at 10.

On March 3, 2013, Plaintiff was allowed to see Dr. Obaisi. The notes from that visit reference Plaintiff's chronic back pain and arthritis in his knees. Dr. Obaisi did not prescribe any medication or schedule a follow-up appointment. Despite Plaintiff's repeated and continuing oral and written requests, Plaintiff was not allowed to see a doctor or PA from March 2013 until he left Stateville in July 2014. During this time period, he had no medication for his back or knee issues.

In his first amended complaint [6], Plaintiff alleges the following claims: a deliberate indifference claim against PA Williams, Dr. Obaisi, and Dr. Carter (Count I); a deliberate indifference claim against IDOC officials (Count II); a *Monell* policy claim against Wexford (Count III); a *Monell* policy claim against IDOC officials (Count IV), and a *respondeat superior* claim against Wexford (Count V). Currently before the Court is the Medical Defendants' motion to dismiss Counts I, III, and V of the amended complaint.

## II.   Legal Standard

Rule 8(a) requires a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement

need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), "the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter*, 17 F. Supp. 3d at 756. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *Concentra Health Servs.*, 496 F.3d at 776. The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

### III. Analysis

#### A. Deliberate Indifference and *Monell* Claims (Counts I and III)

Defendants argue that Plaintiff has "pled himself out of court" by "affirmatively demonstrat[ing] that he has received a continuing course of treatment that obviates his purported claim for deliberate indifference." [67] at 2. Defendants assert that, "[l]ike the inmate in *Estelle* [*v. Gamble,* 429 U.S. 97 (1976)], [P]laintiff has affirmatively pled that he has been seen on multiple occasions by medical personnel with respect to his alleged arthritis and back pain and has received treatment including x-rays, pain medication, and balm." [67] at 8. "While Plaintiff alleges that other tests and treatment could have been performed or that permanent prescriptions and follow-up visits could have been ordered," Defendants continue, "this disagreement over the order and course of treatment by medical personnel is not . . . a valid Eighth Amendment claim." *Id*. Defendants also argue that, because Plaintiff's deliberate indifference claim is deficient, his

6

derivative claim for *Monell* liability also fails and must be dismissed.

Plaintiff responds that he has not pled himself out of court, because allegations of some medical treatment do not necessarily defeat a claim for deliberate indifference. Plaintiff explains that during the time he was at Stateville, the Medical Defendants "engaged in a pattern of practice where they saw [him] only intermittently, consistently failed to schedule him for follow-up appointments, consistently failed to give him prescribed doses of medication that would last until his next appointment, and consistently failed to give him automatic re-fills of his prescriptions," even though he "was indisputably suffering from chronic arthritis and back pain[.]" [70] at 6.

The Eighth Amendment's proscription against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Estelle,* 429 U.S. at 103). "Accordingly, 'deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Id.* (quoting *Estelle,* 429 U.S. at 104). A deliberate indifference claim consists of both an objective and a subjective element. See *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The plaintiff must be able to establish both (1) that he suffered an objectively serious medical condition and (2) that the defendant acted with deliberate indifference to that condition. *Id.*

A medical condition is "serious" for purposes of establishing deliberative indifference to a serious medical need if the condition is "one that a physician has diagnosed as needing treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (internal citation

and quotation marks omitted); see *also Roe,* 631 F.3d at 857–58; *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

"The court must examine the totality of the inmate's medical care in determining whether that care constitutes deliberate indifference to his serious medical needs." *Jones v. Natesha*, 233 F. Supp. 2d 1022, 1027 (N.D. Ill. 2002). "[D]elays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). Further, although a claim for deliberate indifference cannot be based on mere negligence, "a prisoner is not required to show that he was literally ignored by the staff." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000); see *also Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (plaintiff can show that defendant acted with reckless disregard to a serious medical need by inaction or "woefully inadequate action" (internal quotation marks and citation omitted)). Instead, a prison doctor can be found to be "deliberately indifferent even though [he or] she provided some minimal treatment" to the prisoner. *Conley v. Birch*, 796 F.3d 742, 748 (7th Cir. 2015). "Continuing an ineffective treatment plan also may evidence deliberate indifference." *Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017).

In this case, the Court concludes that Plaintiff's allegations are sufficient to state a claim for deliberate indifference. According to the amended complaint, Plaintiff was diagnosed with a painful chronic condition—arthritis—and his complaints of knee and back pain were recorded in Wexford medical records for years before he was incarcerated at Stateville. Plaintiff alleges that he made repeated requests to receive medical treatment for his conditions. Although he saw Williams somewhat regularly prior to March 2010, and was prescribed pain medication, after

8

March 2010 there were large gaps of time between appointments, during which Plaintiff was not receiving any medication for his arthritis and pain: six months between March and September 2010, nearly a year between September 2010 and August 2011, seven months between August 2011 and March 2012, nearly a year between March 2012 and March 2013, and another seventeen months from March 2013 until Plaintiff left Stateville. The Court cannot say based solely on the pleadings that the treatment Plaintiff was provided was sufficient to avoid a deliberate indifference claim. The pleadings plausibly suggest that the Medical Defendants continued with an ineffective treatment plan—one that including short prescriptions and no scheduled follow-up care—despite knowing that Plaintiff's condition was chronic and required continuous treatment, which Plaintiff had not been receiving. Cf. *Cesal*, 851 F.3d at 723; *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (plaintiff prisoner's allegations that "medical defendants, despite their knowledge of his serious medical condition, ignored his request for effective treatment for over ten months" and "knowingly ignored his complaints of pain by continuing with a course of treatment that was ineffective and less efficacious without exercising professional judgment" were sufficient to state a claim for deliberate indifference).

The Medical Defendants compare this case to *Estelle*, in which the plaintiff inmate alleged that the prison doctor/medical director was deliberately indifferent to a back injury that he sustained while engaging in prison work. 429 U.S. at 99. There, the Supreme Court affirmed the district court's dismissal of the plaintiff's claim of deliberate indifference, explaining that the plaintiff could not state a claim for deliberate indifference where his pleadings showed that he had been seen and treated by medical personnel on "17 occasions spanning a 3-month period," diagnosed with "lower back strain" and treated with "bed rest, muscle relaxants, and pain relievers." 429 U.S. at 107. The Court rejected the plaintiff's argument that his doctor should

have done more, explaining that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id*.

In contrast to the plaintiff in *Estelle*, Plaintiff was not simply disagreeing with the Medical Defendants' course of treatment. Instead, he alleges that he received no treatment at all for extended periods of time while he was in custody at Stateville. The pleadings indicate that the individual Medical Defendants knew that Plaintiff suffered from a painful chronic condition, and determined that treatment with pain medication was appropriate. Despite this, Plaintiff allegedly was repeatedly forced to go without pain medication for up to seventeen months and his repeated requests for ongoing medical treatment were ignored. Cf. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (plaintiff's deliberate indifference claim against prison doctor for delay in treating dislocated finger was not frivolous and plaintiff did not plead himself out of court where the complaint and appended records were "silent on the central issue" of why plaintiff "was made to wait for two days after [the doctor's] initial assessment for any treatment for his open dislocation beyond antibiotics and pain medication"). And when the individual Medical Defendants did treat him, they did not schedule him for follow-up appointments and did not give him prescriptions that would last until his next appointment or be re-filled automatically.

The Medical Defendants, citing *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996), also argue that "Plaintiff's preference for automatic refills" and "expectation for the automatic scheduling of follow-up visits" are medical decisions that "do not give rise to a constitutional violation." [72] at 4-5. In *Snipes*, the Seventh Circuit affirmed the grant of summary judgment for a prison doctor who removed the plaintiff's toenail (which the parties agreed needed to be removed) without using local anesthetic. The court concluded that "[w]hat we have here is not

10

deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner," and explained that "a 'mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference." *Id*. at 591. In contrast to *Snipes*, Plaintiff's complaint here alleges that due to the Medical Defendants' actions, Plaintiff received *no treatment* for large gaps of time, despite the recognition that he suffered from a chronic, permanent condition. The Medical Defendants argue that they cannot be held responsible for these gaps in treatment because they simply saw Plaintiff during discrete visits, and "did not process written request slips, work in the pharmacy, . . . or make scheduling decisions." [72] at 5-6. It may turn out to be the case that the Medical Defendants had no control over scheduling or re-filling prescriptions between medical appointments, but the Court is required to accept Plaintiff's well-plead allegations as true in deciding the motion to dismiss. Plaintiff's allegations plausibly suggest that the Medical Defendants could and should have scheduled Plaintiff's follow-up visits and provided longer prescriptions or automatic refills as part of an effective course of treatment, and that their failure to do so led to Plaintiff's pain and suffering during long gaps in treatment.

For these reasons, the Court denies the Medical Defendants' motion to dismiss Plaintiff's deliberate indifference claim (Count I). Since the Medical Defendants' argument for dismissing the *Monell* claim (Count III) is contingent on winning dismissal of the deliberate indifference claim, see [67] at 9, their motion is also denied as to the *Monell* claim.[3]

---

[3] In their reply brief, the Medical Defendants argue for the first time that the *Monell* claim also fails because it is not supported by sufficient factual allegations. The Court will not consider this argument because "[a]rguments raised for the first time in reply briefs are ordinarily waived, and rightly so given the lack of opportunity for the other party to respond to them." *Peterson v. Village of Downers Grove*, 103 F.Supp.3d 918, 925 (N.D. Ill. 2015).

### B. *Respondeat Superior* Claim (Count V)

The Medical Defendants argue that there is no basis for *respondeat superior* liability against Wexford because Wexford, as a private corporation, is not vicariously liable under Section 1983 for its employers' deprivation of others' civil rights. [67] at 9 (citing *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002)).

Although the Seventh Circuit has "recently questioned whether the rule against vicarious liability *should* . . . apply to private companies," it has also recognized that, "[u]nder existing precedent, neither public nor private entities may be held vicariously liable under § 1983." *Collins v. Al-Shami*, 851 F.3d 727, 734 (7th Cir. 2017) (emphasis added). Under this precedent, "[r]*espondeat superior* liability does not apply to private corporations under § 1983." *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). This Court is bound to follow Seventh Circuit precedent. See, *e.g.*, *Pindak v. Dart*, 125 F. Supp. 3d 720, 726 (N.D. Ill. 2015) ("Though the court is sympathetic to Plaintiffs' request to hold Securitas vicariously liable for the actions of its employees, it ultimately agrees with Securitas that *respondeat superior* liability is barred by Seventh Circuit precedent."). Therefore, the Court grants the Medical Defendants' motion to dismiss Plaintiff's *respondeat superior* claim against Wexford (Count V).

### C. Statute of Limitations

The Medical Defendants argue that "any claims pre-dating the filing of the original complaint by more than two years must be barred pursuant to the applicable statute of limitations," which in this case is Illinois' two-year statute of limitations for personal injury claims. [67] at 2, 10 (citing *Owens v. Okure*, 488 U.S. 235, 239; 735 ILCS § 5/13-202). The Medical Defendants explain that "[t]here is no allegation in the complaint that any claims in

existence prior to April 8, 2012, were preserved or that the statute of limitations was tolled in any way," and therefore "any claim based on alleged violation of [P]laintiff's rights pre-dating April 8, 2012, must be dismissed." *Id*. at 10.

Plaintiff responds that he was the victim of a continuing course of conduct: "Medical records maintained by Wexford defendant reflect that Payton suffers from chronic arthritis and recurring back pain; Wexford defendant sees Payton; Wexford defendant does not schedule Payton follow-up appointment; Wexford defendant prescribes inadequate amount of medication to alleviate Payton's pain and discomfort; Wexford defendant does not order automatic refill of Payton prescriptions; and Payton goes months without treatment." [70] at 13. Therefore, Plaintiff argues, under Illinois' continuing violation doctrine, his claim did not accrue and the statute of limitations did not begin to run until he was transferred out of Stateville. See [70] at 12 (citing *Cooney v. Casady*, 652 F. Supp. 2d 948, 954 (N.D. Ill. 2009)).

"Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). "In Illinois the statute of limitations for personal-injury actions is two years from when the cause of action accrued[.]" *Id*. While "[f]ederal law . . . determines the accrual of a claim" brought under Section 1983, *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992), "tolling principles . . . are borrowed from the forum state"—here, Illinois. *Bebout v. Thomas*, 409 Fed. Appx. 27, 29 (7th Cir. 2011).

"A limitations defense is not often resolved on a Rule 12(b)(6) motion because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Amin Ijbara Equity Corporation v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt.*, *LP*, 559 F.3d 671, 674 (7th

Cir. 2009)). Dismissal at the motion to dismiss state is appropriate only "when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Id*.

In this case, the Court cannot determine from the face of the complaint and the parties' cursory discussion of the law that Plaintiff's claims are barred by the statute of limitations. Neither party discusses when a deliberate indifference claim accrues under federal law. The Court is aware of some case law holding that a Section 1983 deliberate indifference claim does not accrue until the plaintiff exhausts the prison's grievance procedure or is transferred out of the prison. See, e.g., *Hoban v. Anderson*, 688 Fed. Appx. 385, 388 (7th Cir. 2017); *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017). Assuming this case law is applicable to Plaintiff's facts, it is not apparent from the complaint when (or if) Plaintiff exhausted the prison grievance procedure or if he was transferred out of Stateville before he was able to do so.

Defendants do not address the Illinois "continuing violation" tolling doctrine on which Plaintiff relies. Under this doctrine, "where a tort involves a continuing or repeated injury, 'the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.'" *Cooney v. Casady*, 652 F. Supp. 2d 948, 954 (N.D. Ill. 2009) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003)). Without discussing applicable precedent, Defendants assert that, "[t]o the extent Plaintiff alleges that any individuals engaged in a continuing course of conduct, Plaintiff must be referencing other, unnamed individuals," because "[t]he conduct of each named medical defendant began and ended with each visit." [72] at 6. However, as explained above, the complaint's allegations plausibly suggest that the Medical Defendants had responsibility for Plaintiff's care beyond his discrete visits, and could and should have scheduled Plaintiff's follow-up visits and provided longer prescriptions or automatic refills as part of an effective treatment plan.

14

For these reasons, the Court cannot determine based on the pleadings that the continuing violation doctrine is inapplicable or that Plaintiff's claims against the individual Medical Defendants are barred in whole or in part by the statute of limitations.

### IV.     Conclusion

For these reasons, the Medical Defendants' motion to dismiss [67] is granted as to Plaintiff's *respondeat superior* claim against Wexford (Count V) and denied as to Plaintiff's deliberate indifference and *Monell* claims against the Medical Defendants (Counts I and III). This matter is set for status on December 20, 2017 at 9:00 a.m.  The parties should come prepared to discuss whether and, if so when, a *Pavey* hearing should be conducted to determine if Plaintiff has exhausted his administrative remedies.

Dated: December 1, 2017

_____
Robert M. Dow, Jr.
United States District Judge